UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

JULIAN GARCIA, §
§
     Plaintiff, §
§
VS. § CIVIL ACTION NO. 3:16-CV-120
§
JOHN TOBIAS, *et al*, §
§
     Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Julian Garcia, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit alleging that Defendant Myra Montez assigned him job duties that did not accommodate his medical restrictions.[1] Plaintiff proceeds *pro se* and *in forma pauperis*. Defendant has filed a motion for summary judgment (Dkt. 20) and Plaintiff filed a response (Dkt. 21). Having reviewed the parties' briefing, the applicable law, and all matters of record, the Court concludes that Defendant's summary judgment motion will be **granted** and Plaintiff's claims will be **dismissed** with prejudice for the reasons that follow. Defendant's motion to seal its summary judgment motion and appendix (Dkt. 19) will be **granted** because the filings contain Plaintiff's confidential medical information.

## I. BACKGROUND

Garcia alleges that Myra Montez, the Chief of Classification at TDCJ's Darrington Unit, exhibited "deliberate indifference of serious medical need by forcing [Plaintiff] to

---

[1] Plaintiff also brought a claim of excessive force against Officer John Tobias at the Dalhart Unit (Dkt. 1). The Court severed the claim against Officer Tobias and transferred it to the Northern District of Texas, Amarillo Division (Dkt. 10).

work against [his] medical handicap capacity as laundry folder" (Dkt. 1, at 3).[2] Montez is

a member of the three-person Unit Classification Committee ("UCC") at the Darrington

Unit (Dkt. 20-1 at 43). Montez explains her job duties in an affidavit:

> As a member of the [UCC], my job duties include assigning inmates to housing and job assignments. When an offender arrives on the Darrington Unit, he is provided a written leave of absence to attend a review of his housing and job assignment in front of the UCC. During that review, the members of the UCC assess the offender's Health Summary for Classification ("HSM-18"), which is based on information provided by the offender's medical provider. When a job assignment is proposed, all three members must vote. If a majority of the panel votes in favor the job assignment, the offender will be assigned to that position.

(*id*.). Pursuant to TDCJ policy, the HSM-18 provides medical and mental health

information specific to the offender and assists the UCC in making appropriate work

assignments (*id*.). Montez avers that, if an HSM-18 does not reflect a medical provider's

determination that an offender should be "medically unassigned," the UCC must assign

the offender a job (*id*. at 44).

Garcia submits medical records showing that he had surgery on his shoulder in

2012 and continued to have pain and limited mobility through at least 2015 (Dkt. 21-1, at

6-17). He arrived at the Darrington Unit in 2014. His HSM-18 form, completed shortly

after his arrival, contained the following restrictions: limited standing; no lifting over ten

pounds; no reaching over shoulder; and no repetitive use of hands (Dkt. 20-1, at 6). On

or about July 25, 2014, the UCC voted to assign Garcia to the laundry department.

Montez states that the UCC did not assign Garcia a specific job in the department (*id*. at

44). Instead, the ranking officer in the laundry department assigned Garcia's job, which

---

[2]     Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

was "laundry folder" (*id*).  Montez states, "Based on my knowledge and experience as [a] member of the UCC for over 17 years, Offender Garcia's job as a laundry folder complied with the guidelines provided" by the relevant TDCJ policy (*id*).  Garcia "remained assigned as a laundry folder until he was reassigned to a position as a counter attendant in 2017" (*id*).

On January 27, 2016, approximately eighteen months after the UCC assigned Garcia to the laundry department, Garcia filed an administrative grievance.  Garcia's primary complaint was against a medical practitioner at the Darrington Unit for allegedly denying him corrective shoulder surgery (Dkt. 1-1, at 13-14).  In the grievance, Garcia additionally stated that "Montez has me working as a laundry folder but I can not work or use my right arm due to my shoulder [condition].  My restrictions are intact but not honored by [Montez]" (*id*. at 13).  He requested that Montez assign him to "medical squad 01" until he had surgery and could "recover" (*id*.).  At step one, TDCJ officials determined that the grievance was unsubstantiated, noting that Garcia was receiving frequent medical care (*id*. at 14) (further noting that his most recent HSM-18 stated that he could not lift over ten pounds, reach over his shoulder, or engage in repetitive use of his hands).  At step two, Garcia complained that Montez was "forcing [him] to work against [his] HSM-18 work restrictions by forcing [him] to fold clothes and work with [his] hands [and] shoulder at the laundry dept., when [his] HSM-18 clearly state[d] no repet[i]tive use of hands, no reaching over shoulder" (*id*. at 15).  TDCJ's response, dated April 12, 2016, read, "Submit an I-60 to your Unit Classification regarding job

placement" (*id*. at 16).[3]  Montez represents that Garcia's grievance was investigated by medical personnel and "was not referred to the UCC or Defendant Montez" (Dkt. 20, at 9).  *See* Dkt. 20-1, at 9-41 (investigation of 2016 grievance by medical department).

Although Garcia alleges that Montez "forced" him to work despite his medical restrictions, Montez maintains that when she voted in 2014 to Garcia's job assignment she was not aware that an assignment to the laundry department would aggravate his medical condition.  She further that she was not aware that Garcia had any issues with his job assignment until this lawsuit was filed in 2016:

> During the time that Offender Garcia was assigned to laundry, I did not receive any I-60's or grievances indicating that he was unable to perform his job due to a medical issue.  I also did not receive notification from the Laundry Captain that Offender Garcia was having any difficulties performing his job because of a medical condition.  I first became aware that Offender Garcia was having issues with his job when I was notified of this lawsuit.

(*id.* at 44).  Montez represents that she does not "have authority to unilaterally reassign an inmate to a different job" (*id.*).  Rather, the reassignment "must be done by a majority vote of all 3 UCC members, or by a Warden or Major" (*id.*).

As relief for his claim in this lawsuit, Garcia seeks "to be medically unassigned [and] awarded proper health care," in addition to monetary damages (Dkt. 1, at 4).

## II.  STANDARDS OF REVIEW

### A.  *Pro Se* Pleadings

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeds *pro se*.  Complaints filed by *pro se* litigants are entitled to a liberal

---

[3]  Garcia does not state whether he submitted an I-60 regarding his job assignment after receiving this grievance response.

construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B.      Summary Judgment—Rule 56

Defendant has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a

reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III.  ANALYSIS

### A.  Official Capacity Claims

TDCJ is a state agency. Tex. Gov't Code § 493.001 *et seq*. A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*,

529 F.3d 599, 604 (5th Cir. 2008).  Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity.  *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983.  *NiGen*, 804 F.3d at 394.

To the extent Garcia sues Montez in her official capacity as a state employee, she is entitled to immunity under the Eleventh Amendment from claims for monetary damages.

**B.     Eighth Amendment**

Garcia alleges that Montez violated his constitutional rights when she voted in 2014 to assign him to work in the laundry department.  Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation.  See *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

Because Garcia was, at all relevant times, a convicted felon in state prison, his claims are governed by the Eighth Amendment's prohibition of "cruel and unusual" conditions of confinement.  *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

In certain circumstances, prison work conditions imposed on an inmate with medical limitations can violate the Eighth Amendment. "If prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). *See Williams v. Henagan*, 595 F.3d 610, 622 n.18 (5th Cir. 2010) ("Prison work conditions may . . . amount to cruel and unusual punishment"); *Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006); *Williams v. Wooten*, 119 F. App'x 625, 626 (5th Cir. 2004).

Montez has invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

Garcia has not demonstrated a genuine issue of material fact as to whether Montez "knowingly" assigned Garcia to a work detail that she knew would "significantly aggravate" his physical condition. *See Jackson*, 864 F.2d at 1246. Montez has presented evidence that she did not know, at the time of her 2014 vote to assign Garcia to the laundry department, that the assignment would significant aggravate the condition of his hands or shoulder.[4] Rather, she became aware of his complaints when he filed this lawsuit in 2016.[5] Garcia has presented no competent summary judgment evidence that Montez had the requisite awareness, and acted with deliberate indifference to Garcia's medical condition, at the time of her vote.[6] To the contrary, Montez has presented evidence that the job assignment made by the UCC in 2014 complied with the medical restrictions then in place for Garcia. *See* Dkt. 20-1, at 43-44 (Montez avers that, based on her seventeen years of experience with the UCC, Garcia's work as a laundry folder complied with the relevant Correctional Managed Health Care policy).

---

[4]    In addition, Garcia has not shown a genuine issue of material fact as to whether his work as a laundry folder actually "significantly aggravate[d]" his condition. Although he submits some medical records from 2015 (Dkt. 21-1), the records do not demonstrate that his physical condition was affected by his work duties.

[5]    *See* Dkt. 20-1, at 44 (Montez states in affidavit that during the time Garcia was assigned to the laundry she received no I-60s or grievances indicating that he was unable to perform his job duties due to a medical issue); Dkt. 20-1, at 9-41 (Garcia's 2016 grievance was investigated by medical department and not by the UCC).

[6]    Garcia alleges that Montez ignored relevant documents when voting, pointing to an HSM-18 from 2010 that limited him to sedentary (Dkt 21, at 2-4). However, the 2010 form was outdated and no longer relevant at the time of Montez's vote in 2014. Garcia also claims that Montez was aware that he had surgery on his right shoulder in 2012. This contention cannot prevent summary judgment because, whether Montez was aware of Garcia's 2012 surgery or not, the mere fact of Garcia's past surgery cannot suffice to demonstrate that Montez acted with deliberate indifference when she voted to assign him to the laundry department.

Finally, the Court notes that Garcia does not identify any specific medical restrictions that should have been accommodated by his 2014 work assignment but were not. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (affirming dismissal of Eighth Amendment claim as frivolous because "the prison adequately accounted for [the inmate's] physical condition when assigning his work detail").

Montez is entitled to summary judgment on Plaintiff's Eighth Amendment claim. In addition, for essentially the same reasons, Garcia has not met his burden to show that qualified immunity does not protect Montez in this case. *See Carroll*, 800 F.3d at 169.

## IV.  CONCLUSION

For the reasons stated above the Court **ORDERS**:

1.      Defendant's motion to seal its summary judgment motion and appendix (Dkt. 19) is **GRANTED**.

2.      Defendant's motion for summary judgment (Dkt. 20) is **GRANTED**.  All of Plaintiff's claims are **DISMISSED with prejudice.**

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 29th day of November, 2018.

_____
George C. Hanks Jr.
United States District Judge